**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RUMFISH Y VINO CORPORATION,
a Belize corporation, and JPL PARTNERS
#1 LP, a California Limited Partnership,

                Plaintiffs,

v.                                          **CASE NO. 8:19-cv-00595-T-36AEP**

FORTUNE HOTELS, INC., a Florida corporation,
RIA-SANDPIPER, INC., a Florida corporation,
RESORT INNS OF AMERICA, INC.
D/B/A TRADEWINDS ISLAND RESORT,
a Florida corporation, and DOES 1-10,

                Defendants.

_____/

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

      Defendants, Fortune Hotels, Inc., RIA-Sandpiper, Inc., and Resort Inns of America, Inc. d/b/a TradeWinds Island Resort (collectively "TradeWinds"), by and through undersigned counsel, submit their Memo of Law in Opposition to Plaintiffs, Rumfish Y Vino Corporation ("RYV") and JPL Partners #1 LP's ("JPL") (collectively "Plaintiffs"), Amended Motion for a Preliminary Injunction ("Motion").

### I.     INTRODUCTION

      TradeWinds, the first party to use any RUMFISH mark in the U.S. by several years, has been operating "RumFish Grill" restaurants since early 2014. While Plaintiffs attempt to portray this case as one in which TradeWinds copied Plaintiffs' mark, TradeWinds actually coined the "RumFish" term in early 2013 months before Plaintiffs claim the alleged copying even occurred. It is undisputed that neither Plaintiff started using the RUMFISH Y VINO mark in the U.S. until November 2016 when JPL opened

1

a single "Rumfish Y Vino" restaurant in the U.S. in Ventura, California. TradeWinds had never heard of RYV or its "Rumfish Y Vino" mark when it coined the "RumFish" term in early 2013 and Plaintiffs had no rights to any RUMFISH marks in the U.S. when TradeWinds commenced use.

Plaintiffs now claim to own a monopoly on all RUMFISH marks in the U.S. with respect to any and all goods and services in any industry and seek the "extraordinary and drastic remedy" of preliminary injunctive relief to stop TradeWinds from using the marks RUMFISH BEACH RESORT, RUMFISH CHARTERS, and RUMFISH BEACH LIFE (collectively referred to as "RUMFISH BEACH AND FISHING Marks") in Florida in connection with goods and services separate and distinct from restaurants and bars, namely beach resorts, fishing charters and clothing. However, Plaintiffs are unable to establish a substantial likelihood of success on the merits on any of their claims.

Initially, Plaintiffs base their trademark infringement claims on an unenforceable and invalid trademark registration for RUMFISH Y VINO that RYV filed in an attempt to block others from acquiring rights in RUMFISH marks. RYV originally filed the application for that mark based on "use in commerce," even though it was admittedly not using the mark in the U.S. RYV's amendment months later to "intent to use" did not correct the application because a bona fide intent to use requires objective documentary evidence and not simply a declaration by the applicant that it intends to use the mark. Plaintiffs have no objective documentary evidence of intent to use at the time of filing the application and rely entirely on their vague statement that they intended to eventually use the mark in the U.S. That is entirely insufficient, and RYV does not have an enforceable registration. Plaintiffs confuse their trademark rights, which are country specific. Operating in Belize does not provide rights in the U.S.

Plaintiffs' bad faith is further demonstrated by the fact that, after learning of TradeWinds' plans to open RumFish Grill at the TradeWinds Islands Resorts on St. Pete Beach ("TradeWinds Resort") in

the U.S. in May 2014, and despite having no rights to RUMFISH in the U.S., RYV rushed to the U.S. Trademark Office and filed an application for RUMFISH alone in April 2014 to extort TradeWinds. After filing, RYV then contacted TradeWinds and demanded $500,000 for TradeWinds to use RUMFISH.  Such extortion eventually led to TradeWinds agreeing to pay $30,000 to RYV to avoid costly proceedings and so that it could proceed with its restaurant that had been planned for over a year without threat by RYV.

In addition to Plaintiffs not having valid trademark rights, the RUMFISH BEACH AND FISHING Marks are not confusingly similar to RUMFISH Y VINO due to the distinction in goods and services and other various factors.  Plaintiffs cannot establish that consumers will confuse JPL's single Rumfish Y Vino restaurant in California with TradeWinds' well-known beach resort, fishing charters and clothing, especially considering that the parties have actually coexisted in the exact same industry – i.e., restaurants – without any known actual confusion for years.

Plaintiffs also cannot establish a substantial likelihood of success on their breach of contract claim.  Plaintiffs claim that the subject Consent and Settlement Agreement ("Consent Agreement"), where RYV consented to TradeWinds' use of the RUMFISH GRILL mark and TradeWinds consented to RYV's use of the RUMFISH Y VINO mark, somehow prevents TradeWinds from ever using any RUMFISH mark in any industry (e.g., computers, automobiles, aircrafts, etc.), even if entirely unrelated to Plaintiffs or their business, unless the word "Grill" is included.  To be clear, Plaintiffs do not contend that TradeWinds is entirely precluded from using the RUMFISH BEACH AND FISHING Marks. Plaintiffs only contend that TradeWinds must insert the term "Grill" in each of the marks. *Plaintiffs' Motion*, p. 14.  Regardless, Plaintiffs simply misconstrue the language in the Consent Agreement and attempt to add significant language – i.e., that TradeWinds is restricted with respect to "any and all goods

and services" – when that language is undisputedly not in the subject sentence or anywhere else in the Consent Agreement. Addition of that phrase would substantially broaden the entire scope of the Consent Agreement and give it an unintended effect.

Regardless of likelihood of success, Plaintiffs cannot demonstrate irreparable harm. The potential diversion or loss of customers is non-existent, as customers seeking the Rumfish Y Vino restaurant in California will not be diverted to a resort on St. Pete Beach thousands of miles away. Moreover, the parties have already been coexisting with RUMFISH marks in the same restaurant industry for two and half years without any known confusion. It is hard to conceive how that the addition of the term "GRILL" to the RUMFISH BEACH AND FISHING Marks, as Plaintiffs contend, will alter the circumstances such as to alleviate irreparable harm and removed the need for "drastic" and "immediate" relief they are seeking. As will be explained, Plaintiffs are not entitled to a Preliminary Injunction.

## II.     FACTUAL SUMMARY

### A.     TradeWinds' Original RUMFISH GRILL Mark.

Plaintiffs' portrayal of the history of the parties and their respective RUMFISH marks is misleading. TradeWinds, who operates TradeWinds Resort, which opened in 1986, originally coined the term "RumFish" at a meeting in early 2013 when brainstorming regarding possible names for its new restaurant concept at the TradeWinds Resort. *See Declaration of Keith Overton*, ¶ 4, 6, attached hereto as **Exhibit "1."** Those discussions are evidenced by an email chain dated February 26, 2013 discussing potential use of "RumFish." *Overton Dec.*, **Ex. A**. Over 70 names were considered, and "RumFish" was considered as a potential name due to everyone's love for rum, seafood and fishing. *Id.* at ¶ 6. TradeWinds purchased the domain name, www.rumfishgrill.com, on March 14, 2013. *Id.* at ¶ 8 and **Ex. B**, which is the ICANN WHOIS page for rumfishgrill.com. TradeWinds had no knowledge of Hugh Darley, who is

referenced in Plaintiffs' Motion, and Mr. Darley did not suggest the RUMFISH name to TradeWinds as Plaintiffs contend. *Id.* at ¶ 9. In fact, Plaintiffs state that they did not even meet Mr. Darley until fall of 2013, and TradeWinds had already decided on "RumFish" months before then in early 2013. *Id.*

Additionally, TradeWinds was not aware of any restaurants or any businesses named Rumfish and was not aware of Rumfish Y Vino in Belize. *Overton Dec.*, ¶ 10. To the best of TradeWinds' knowledge, no third parties were using any RUMFISH marks in the U.S. when they selected the mark in early 2013, and there were no U.S. trademark filings for any RUMFISH marks at that time. *Id.* at ¶ 11.

TradeWinds spent months preparing to open the restaurant and launching the new "RumFish" brand and began marketing and advertising "RumFish Grill" in early 2014. *Id.* at ¶ 12 and **Ex. C** for examples of news articles promoting "RumFish Grill" in early 2014; *and* **Ex. D** for the RumFish Grill Facebook page reflecting a date of creation of February 18, 2014. Additionally, TradeWinds issued a press release on April 2, 2014 regarding the planned opening of "RumFish Grill" in May 2014. *Overton Dec.*, ¶ 13 and **Ex. E** for an issued press release from April 3, 2014 in Tampa Bay Newswire. The restaurant's main attraction was a 33,500-gallon aquarium built by Wayde King and Brett Raymer of Animal Planet's hit series, "Tanked." *Overton Dec.*, ¶ 14. The tank cost approximately $1 million to build and the restaurant cost approximately $5 million to build. *Id.* The restaurant's aquarium was featured on an episode of "Tanked" on Animal Planet that aired nationally on May 16, 2014. *Id.* and **Ex. F** for news article from Tampa Bay Business Journal announcing the show prior to it being aired. TradeWinds opened RumFish Grill in May 2014 as planned. *Id.* at ¶ 17.

**B.    Plaintiffs' RUMFISH Y VINO Mark and Lack of Bona Fide Intent to Use.**

Plaintiffs claim that RYV operated a "Rumfish Y Vino" restaurant in Belize in 2013 and 2014, which TradeWinds was unaware of, but admittedly did not operate a restaurant in the U.S. or otherwise

use the RUMFISH mark in the U.S. in any fashion until November 2016. *Plaintiff's Motion*, p. 3. RYV allegedly had discussions with a California group in 2013 about expanding its Rumfish Y Vino restaurant to the U.S. However, RYV decided <u>not to proceed</u> with the expansion at that time. *Id.* at p. 4. Despite electing not to proceed with an expansion, in October 2013, RYV falsely filed a U.S. trademark application for RUMFISH Y VINO based on use in commerce in the U.S. even though RYV was admittedly not using the mark in the U.S. RYV submitted a false specimen of use to the USPTO of the mark in Belize with the application. *See Dec. of James D. Johnson*, which is attached hereto as **Exhibit "2"; Ex. G.**

However, even if RYV had filed based on intent to use rather than actual use, RYV had no bona fide intent to use at that time. RYV presumably filed the application in an attempt to prevent the California group from opening its own Rumfish Y Vino restaurants in the U.S. *Id.* at p. 5. RYV claims in its Amended Motion that the Solomons, owners of RYV, had a drive to expand the business to the U.S. *Id.* at p. 4-5. However, the Solomons' declared intent to expand in the U.S. is the only evidence that RYV has presented to demonstrate that it had intent to use the RUMFISH Y VINO mark in the U.S. at the time of filing the application. *Id.* at p. 4-6. RYV has presented no other documentary evidence to support intent.

**C.      RYV's Attempt to Extort TradeWinds and Resulting Consent Agreement.**

In the spring of 2014, RYV learned that TradeWinds intended to open the RumFish Grill restaurant in Florida. *Plaintiffs' Motion* at p. 5. RYV was not using any RUMFISH mark in the U.S at that time and did not actually start using its RUMFISH Y VINO mark in the U.S. until November 2016. *Id.* at p. 4-6, 8. Regardless of the lack of use, upon learning of TradeWinds' plans, RYV rushed to the U.S. Trademark Office on April 11, 2014, eight days after TradeWinds' press release issued, and improperly filed a trademark application for RUMFISH alone based on intent to use. *Id.* at p. 5; *see also*

Ex. O to Plaintiff's Motion [Doc. 2-12]. It is clear that RYV preemptively filed such registration solely in an attempt to extort TradeWinds, as RYV then immediately reached out to TradeWinds and demanded $500,000 from TradeWinds for RYV to allow TradeWinds to use its RUMFISH GRILL mark. *See Johnson Dec.* ¶ 8; *see also* letter from TradeWinds' counsel to RYV's counsel in response to the $500,000 demand, which is attached to the *Johnson Dec.* as **Ex. H.** At that time, RYV had still failed to correct its RUMFISH Y VINO trademark application that was based on alleged use in commerce in the U.S. and referenced that application when attempting to extort TradeWinds.

Despite the fact that RYV had no rights to the RUMFISH mark in the U.S., TradeWinds desired to avoid costly litigation and USPTO proceedings that would be necessary to establish its rights in the RUMFISH mark and defeat RYV's fraudulent filings. *Overton Dec.*, ¶ 16. Thus, TradeWinds ultimately agreed to pay RYV $30,000 as a "nuisance payment" and memorialized it in the form of the subject Consent Agreement. *Id.*; *see also* Consent Agreement attached hereto as **Exhibit "3."** The main non-monetary terms were fairly straightforward: RYV would consent to TradeWinds' use of RUMFISH GRILL in the U.S. for restaurants and bars and TradeWinds would consent to RYV's use of RUMFISH Y VINO in the US and a defined "Caribbean Territory" for restaurants and bars. *Johnson Dec.*, ¶ 9. The parties did not place or intend to place any restrictions on use of any goods and services outside of restaurant and bars. *Id.* In fact, restrictions on use of marks outside of restaurants, bars and clothing were never discussed between the parties or counsel. *Id.*

At the beginning of May 2014, counsel for the parties prepared various drafts of the Consent Agreement. *Johnson Dec.*, ¶ 10. The entire Consent Agreement pertains to restaurant and bar services (and clothing for TradeWinds in Section 1). Plaintiffs claim that a sentence in Section 3 – "Fortune also agrees any and all uses of the term 'Rumfish' must be used in connection with and immediately followed

by the term 'Grill'" ("Rumfish Variation Clause") – prohibits TradeWinds from using the RUMFISH BEACH AND FISHING Marks.  The language Plaintiffs base that interpretation on is "any and all uses." Plaintiffs claim that such language means "any and all goods and services."  Such reading adds language not present in that section, is inconsistent with the entire Consent Agreement, and significantly broadens and changes the entire scope of the Consent Agreement.

Rather, the phrase "any and all uses" immediately precedes and refers specifically to "of the term 'Rumfish.'"  Thus, it is a modifier phrase for Rumfish terms.  "Uses of the term Rumfish" means variations of "Rumfish" marks plus another term for restaurant and bar services (i.e., such use variations of Rumfish plus another term must also include the term Grill).  RYV's counsel, who drafted that sentence, left out any reference to goods and services.  Thus, that Rumfish Variation Clause was clearly intended to refer to the goods and services referred to throughout the Agreement - restaurants and bars.

The Rumfish Variation Clause was not included in original drafts of the Consent Agreement.  A redline comparison of draft versions 2 and 3 of the Consent Agreement from May 12, 2014 shows that the Rumfish Variation Clause was not present.  *Johnson Dec.*, ¶ 11; **Ex. I.**  Rather, TradeWinds was simply prohibited from using a short number of terms similar to RUMFISH Y VINO because TradeWinds was consenting to RYV using that mark.  The Rumfish Variation Clause was subsequently added by RYV's counsel in draft version 4 to Section 3 after the sentence "Fortune agrees that it will not utilize the words and phrases RUMFISH, RUMFISH BAR, RUMFISH WINE, RUMFISH AND WINE, and/or RUMFISH Y VINO *in connection with restaurant and bar services* in the United States" ("Sentence 1") (emphasis added).  A redline comparison of draft versions 3 and 4, which was sent by RYV's counsel to TradeWinds' counsel on May 13, 2014, is attached to the *Johnson Dec.* as **Ex. J.**

The purpose of the new sentence was to expand upon Sentence 1 insofar as that, although TradeWinds agreed not to use any of the specific marks listed in the Sentence 1 of Section 3 for restaurant and bar services, TradeWinds would also agree to use the term "Grill" with any other marks containing the term RUMFISH that it used with restaurant and bar services. *Johnson Dec.*, ¶ 13. However, the added sentence was not intended to significantly broaden and change the entire scope of the Consent Agreement by now restricting TradeWinds' rights in any industry with respect to any goods and services. In fact, if Plaintiffs' interpretation was correct, the first sentence would have been unnecessary because those marks would be prohibited anyway because they did not include the term "Grill." If the parties truly intended to substantially broaden the scope of the Consent Agreement, they could have done so by specifically stating "all goods and services" in that section or others but did not.

In fact, on May 21, 2014, eight days after the Rumfish Variation Clause was added by RYV's counsel, RYV's counsel sent an email to TradeWinds' counsel and stated: "When we say your client cannot use RUMFISH standing alone, we want to clarify that it would include 1-844-RUMFISH." *Johnson Dec.*, ¶ 15 and **Ex. K**. If RYV intended for the Rumfish Variation Clause to preclude TradeWinds from using "RumFish" unless immediately followed by "Grill" for any and all goods and services, the 1-844-RUMFISH mark would not have been permitted because it was not followed by "Grill" and RYV's counsel would not have been inquiring about it. Clearly, the Rumfish Variation Clause was not intended to have the broad effect that Plaintiffs claim now five years later.

**D.    The Guy Harvey Outpost, Rebranding and Recent Negotiations.**

TradeWinds previously entered into a licensing agreement with Guy Harvey Outpost in May 2012 and rebranded one of its former hotels, Sandpiper Beach Resort, as the Guy Harvey Outpost at tha time. *Overton Dec.*, ¶ 5. However, the license with Guy Harvey Outpost was set to expire in March

2019.  *Id.* at ¶ 18.  Thus, during the spring and summer of 2018, TradeWinds considered a number of rebranding options.  *Id.*  Due to the success of RumFish Grill and well-known reputation, TradeWinds ultimately decided to rebrand the resort as RumFish Beach Resort and also decided to expand use of "RumFish" variations such as RumFish Charters for its fishing charter services outside of the bar and restaurant industry.  *Id.*  Throughout its contemplation of various potential rebrands, TradeWinds was cognizant of the Consent Agreement but knew that it only pertained to restaurant and bar services.  *Id.* at ¶ 19.  TradeWinds did not want to take any actions that would be contrary to the terms of the Consent Agreement.  *Id.*  Significantly, the parties have operated their respective RUMFISH restaurants for several years without any known actual confusion.  *Id.*

In or about August 2018, TradeWinds' counsel contacted RYV regarding the proposed new rebranding.  *Johnson Dec.*, ¶ 16.  While the Consent Agreement did not prohibit TradeWinds' use of the RUMFISH BEACH AND FISHING Marks, TradeWinds decided to seek express consent to use them out of an abundance of caution due to the massive efforts and costs that would go into the rebrand.  *Overton Dec.*, ¶ 20.  TradeWinds expected little resistance because the goods and services were very different from the restaurant owned by JPL in California and the chances of consumer confusion were very low.  *Id.* ¶ 21.  However, Plaintiffs not only refused to provide express consent, but also explained their position that they believed the Consent Agreement prohibited TradeWinds from using any RUMFISH mark in connection with any goods and services, even outside of restaurant and bar services, unless RUMFISH was immediately followed by the term "GRILL."  *Johnson Dec.*, ¶ 17.

Despite Plaintiffs' improper interpretation of the Consent Agreement, TradeWinds attempted to negotiate a potential resolution to avoid costly litigation.  *Id.* at ¶ 18.  At all times, TradeWinds expressly maintained that the Consent Agreement did not restrict use of RUMFISH variations with goods and

services outside of bars and restaurants, that TradeWinds did not actually need Plaintiffs' consent to use the RUMFISH BEACH AND FISHING Marks and that it was only negotiating with Plaintiffs to avoid costly litigation. *Id.* at ¶ 19. Also, TradeWinds' counsel was clear in multiple correspondence that the RUMFISH BEACH AND FISHING Marks were very important to TradeWinds and that litigation would likely result if a resolution could not be met. *Id.* Ironically, at one point in the negotiations, Plaintiffs demanded that they be entitled to use the RUMFISH mark alone, even with restaurant and bar services. *Id.* at ¶ 20. Ultimately, the parties were unable to reach a resolution and TradeWinds.

Plaintiffs claim in their Motion that they previously put TradeWinds on notice of the "Grill" requirement in March 2016 with respect to a RumFish Grill restaurant that was set to open in the Tampa airport, and that TradeWinds acknowledged such requirement in a response letter. *See* Exs. G and H to Plaintiffs' Motion [Docs 2-9 and 2-10]. However, that RumFish Grill was for a restaurant, not goods and services outside of restaurants and bars, and is clearly distinguishable from use here.

### III.   MEMORANDUM OF LAW

#### A.   Legal Standard.

A court may grant a preliminary injunction *only* if the movant establishes each of the following:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to public interest.

*Wreal, LLC v. Amazon.com, Inc.*, 850 F.3d 1244, 1247 (11th Cir. 2016). A preliminary injunction is the "exception rather than the rule" and is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). "Mandatory preliminary relief, which goes well beyond simply maintaining the *status quo* [,] is particularly disfavored,

and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976); *see also Glen Raven Mills, Inc. v. Ramada Intern., Inc.*, 852 F. Supp. 1544 (M.D. Fla. 1994) (denying preliminary injunction even where the plaintiff had established several factors of likelihood of confusion, the defendant's marks were very similar and defendant's advertising would likely result in confusion).

**B.     Plaintiffs Cannot Establish a Substantial Likelihood of Success on the Merits.**

   **1.     Trademark Infringement Claims.**

      To prevail on a trademark infringement claim, a plaintiff must establish that (a) the plaintiff's mark is valid and enforceable and (b) defendants have adopted a mark that is confusingly similar to the plaintiff's mark. *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010); *Blackwall Group, LLC v. Sick Boy, LLC*, 711 F. Supp. 2d 1322, (M.D. Fla. 2011).

      **a.     Plaintiffs Cannot Establish a Valid and Enforceable Mark.**

      Plaintiffs cannot establish a substantial likelihood of success on their trademark claims because RYV's registration for RUMFISH Y VINO is invalid and unenforceable.

      A party may challenge another's trademark registration based on a lack of bona fide intent to use because such intent is a statutory requirement of an intent-to-use application. *M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1375 (Fed. Cir. 2015). Whether an applicant had a bona fide intent to use a mark in commerce <u>at the time of application</u> is an objective determination based on all circumstances, and "the circumstances must indicate that the applicant's intent to use the mark was firm <u>and not merely intent to reserve a right in the mark</u>." *Id.* at 1376-77 (emphasis added). The "intent must be demonstrable and more than a mere subjective belief." Id. at 1375. "The absence of any documentary evidence on the part of an applicant regarding such [bona fide] intent [to use] constitutes objective proof sufficient to

establish that the applicant lacks a bona fide intention to use its mark in commerce." *Spirits Intern'l, B.V. v. SS. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birligi*, 99 U.S.P.Q.2d 1545 at *3 (TTAB 2017); *see also Boston Red Sox Baseball Club LP v. Sherman*, 88 U.S.P.Q.2d 1581, *6 (TTAB 2008) (finding a lack of bona fide intent to use where the applicant failed to submit documentary evidence of intent to use contemporaneous with the filing of the application).

Further, "an applicant's mere statement that it intends to use the mark, and its denial that it lacked a bona fide intent, do not establish, in fact, that it had a bona fide intent to use the mark in commerce when it filed the involved application." *SmithKline Beecham Corp. v. Omnisource DDS, LLC*, 97 U.S.P.Q.2d 1300 *5 (TTAB 2010). An applicant cannot demonstrate intent to use but simply stating: "Yes, indeed, at the time we filed that application, I did truly intend to use the mark at some time in the future." *Id.* (citations omitted). "Objective" evidence can include a written plan of action for a new product or service, marketing plans or business plans, test marketing, product or service research or development, market research, marketing or promotional materials, steps to obtain required governmental approval, and licensing efforts. *Id.*; 3 *McCarthy on Trademarks and Unfair Competition* §19:14 (5th ed. 2019). Filing a trademark application does not constitute sufficient documentary evidence of an intent to use. *M.Z. Berger*, 787 F.3d at 1377 (finding applicant merely had an intent to reserve a right in the mark at the time of filing the application).

Here, Plaintiffs have no objective evidence whatsoever at the time of filing the application for RUMFISH Y VINO of a bona fide intent to use that mark. Simply filing the trademark application and declaring now that the owners had an intent to expand is clearly insufficient. RYV filed its application for RUMFISH Y VINO in October 2013, but did so after deciding not to expand and presumably in bad faith to block others from using the name or, at a minimum, in an attempt to merely reserve a right in the

13

mark. Plaintiffs have not submitted any test marketing, marketing or business plans, service research development or marketing or promotional materials from 2013 when it filed the application.

To the contrary, the documentary evidence available demonstrates that Plaintiffs did not have a bona fide intent to use until 2016. JPL did not register to conduct business in the U.S. until February 19, 2016. *See* printout from California Secretary of State, attached to *Johnson Dec.* as **Ex. L**.[1]  Additionally, the domain name for Rumfish Y Vino in Ventura, www.rumfishyvinoventura.com, was not created until October 7, 2016. *See* ICANN WHOIS page for rumfishyvinoventura.com attached to *Johnson Dec.* as **Ex. M**. Thus, the evidence actually demonstrates that JPL started planning use in 2016, not 2013.

Thus, because Plaintiffs did not have a bona fide intent to use the RUMFISH Y VINO mark at the time of filing the application in October 2013, Plaintiffs cannot establish a substantial likelihood of success on their trademark claims because they do not have an enforceable registration.

### b.    TradeWinds Has Priority in the RUMFISH mark.

Moreover, TradeWinds has priority in the RUMFISH mark.  RYV admittedly did not start using its RUMFISH Y VINO mark in the U.S. until November 2016.  It is undisputed that TradeWinds commenced use of RUMFISH GRILL by May 2014 at the latest.  Plaintiffs' only claim to priority is its RUMFISH Y VINO trademark application that was filed in October 2013.  However, RYV falsely filed that application as a use-based application and submitted a false specimen of use, which creates a presumption of a bad faith filing.  *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1361 (M.D. Fla. 2017) ("[W]here a trademark owner knows that he has not used a trademark in commerce but nonetheless submits an application based on use of the mark in commerce, the Court may infer a fraudulent intent").

---

[1] To the best of TradeWinds' knowledge, RYV is not registered to do business in the US.

Additionally, RYV did not amend the application until May 8, 2014, after TradeWinds filed its trademark application for RUMFISH GRILL. Regardless, RYV's RUMFISH Y VINO application was still invalid because RYV did not have a bona fide intent to use. Thus, Plaintiffs' claims must fail because they cannot establish priority. *See New Wave Innovations, Inc. v. McClimond*, 589 Fed.Appx. 527, 528 (11th Cir. 2015).

### c.    Plaintiffs Cannot Demonstrate a Likelihood of Confusion.

Courts consider seven factors when analyzing potential likelihood of confusion between marks:

(1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana*, 611 F.3d at 775.

### i.    Strength of the Mark.

This factor does not favor either party. Both Plaintiffs and TradeWinds have been using RUMFISH variations in the U.S. TradeWinds claims priority by several years. Thus, TradeWinds does not contest the strength of RUMFISH at this time, but reserves the right to do so a later date.

### ii.    Similarity of the Marks.

While the RUMFISH BEACH AND FISHING Marks – RUMFISH BEACH RESORT, RUMFISH CHARTERS, and RUMFISH BEACH LIFE (TradeWinds is not using RUMFISH alone) – all contain the term RUMFISH, the other parts of the various marks differentiate them. The "Y Vino" portion of Plaintiffs' mark, which means "and wine" suggests a restaurant and wine bar. To the contrary, BEACH RESORT, CHARTERS AND BEACH LIFE all suggest beach-related activities. Additionally, TradeWinds' marks all are used in connection with the TradeWinds' name (i.e., RumFish Beach Resort

*at TradeWinds*).  TradeWinds resort has been open since 1986, is the largest resort on the west coast of Florida, and consumers visiting the resort in St. Pete would not confuse the TradeWinds name with a single restaurant and wine bar in California.  *Overton Dec.*, ¶ 18.  Moreover, the "F" in TradeWinds' RumFish marks is capitalized while the "f" in Plaintiffs' Rumfish Y Vino mark is not capitalized.  Finally, the stylization of the marks is very different.  Thus, the differences in the marks sufficiently differentiate them enough to avoid any consumer confusion.  *See Blackwall*, 771 F. Supp. 2d. at 1326-27 (finding that "Sickboy's Bad Habit Lounge" mark was only somewhat similar to "Sick Boy" mark because of the addition of "bad habit lounge" and differences in stylization in use).

### iii.    Similarity of the Goods and Services.

This factor weighs heavily in favor of TradeWinds, as the single service offered by Plaintiffs, i.e., a restaurant, is distinctly different than the services offered by TradeWinds with the marks in dispute, i.e., a large, well-known beach resort, fishing charters and clothing.  *See Taj Mahal Enters., Ltd. v. Trump*, 745 F. Supp. 240 (D.N.J. 1990).  In *Taj Mahal*, a single restaurant in D.C. operating for 25 years with the registered mark TAJ MAHAL filed an infringement action against defendants for naming their new casino and hotel in New Jersey the TRUMP TAJ MAHAL.  The court granted summary judgment in favor of defendants finding no likelihood of confusion where the plaintiff's services were limited to a restaurant while defendants' hotel, in addition to restaurants, included guest accommodations, conference services, entertainment and casinos.  *Id.* at 251.  The court stated: "There is no evidence on the record that anyone has arrived in Atlantic City, eaten dinner at the TRUMP TAJ MAHAL, and then been surprised to find out that plaintiff did not own and operate the casino restaurant."  *Id.* at 250.

The facts here are nearly identical.  Plaintiffs only operate a single restaurant in California while TradeWinds operates a well-known, large beach resort in Florida with entertainment, accommodations

and fishing charters. Thus, there is very little similarity between the goods and services of the parties. *See also Blackwall*, 771 F. Supp. 2d. at 1326-27 (finding motorcycle lifestyle-themed clothing to be very different than a rock-them bar and restaurant, despite overlap in a "rebellious attitude").

### iv.     Similarity of Sales Methods and Customer Base.

This factor weighs heavily in favor of TradeWinds due to the large geographical gap in their locations. JPL services customers in Ventura, California and the surrounding area looking for a restaurant. TradeWinds services customers in Florida seeking a beach resort and vacation. While it is conceivable that a small number of consumers from Ventura, California could visit the TradeWinds resort, that percentage of consumers would be extremely minimal compared to the total number of customers that visit TradeWinds resort each year.

### v.     Similarity of Advertising.

This factor again weighs heavily in favor of TradeWinds. While the parties may use some similar forms of advertising including websites and social media, those forms of advertising are too common to support a likelihood of confusion. *See Blackwall*, 771 F. Supp. 2d. at 1328 (finding website advertising too common to favor plaintiff). To the contrary, the parties' target markets are very different. Plaintiffs' advertising targets consumers in Ventura, California and surrounding area. TradeWinds' advertising, while nationwide, mainly targets consumers located within Florida. Regardless, website advertising "would dispel rather than cause confusion, however, because the websites are separate and distinct, suggesting two completely unrelated business entities." *Tana*, 611 F.3d at 778.

### vi.     Intent of Alleged Infringer to Misappropriate goodwill.

This factor weighs heavily in favor of TradeWinds. TradeWinds has been using the RUMFISH GRILL mark in good faith since early 2014. The RUMFISH BEACH AND FISHING Marks are all

variations of TradeWinds' own RUMFISH GRILL mark, and were chosen based on TradeWinds' success with RumFish Grill. *Overton Dec.*, ¶ 18. TradeWinds' decision to use those marks is completely unrelated to Rumfish Y Vino, and TradeWinds did not intend to misappropriate Plaintiffs' goodwill. *Id.* TradeWinds, the largest resort on the west coast of Florida with over 1100 employees, operating since 1986, has no motivation to trade off the goodwill of a single restaurant in California that opened in 2016. *Id.*; *see Tana*, 611 F.3d at 779 (finding "Plaintiff is unable to identify any credible motive for Defendants to trade on the name of his restaurant").

Plaintiffs' contentions regarding intentional copying are misplaced and focus on TradeWinds' claimed copied in 2014. While TradeWinds denies copy in 2014 as well, Plaintiffs consented to use of RUMFISH GRILL in 2014. The question of intent here concerns the more recent RUMFISH BEACH AND FISHING Marks. TradeWinds is clearly expanding its own brand now and not copying.

### vii.    Existence of Actual Confusion.

Actual confusion is the most significant factor in assessing likelihood of confusion. *Tana*, 611 F.3d at 779. Again, this factor weighs substantially in favor of TradeWinds. Significantly, the parties have already been coexisting with RUMFISH marks in the restaurant industry for two and half years without any known actual confusion. Plaintiffs have not submitted any evidence of actual confusion. The chances that consumers will now confuse TradeWinds' RUMFISH BEACH AND FISHING Marks, which are used with goods and services separate and distinct from Plaintiffs' restaurant, with Plaintiffs' mark are very low.

Thus, because the factors heavily favor TradeWinds and Plaintiffs cannot demonstrate a likelihood of confusion, Plaintiffs cannot establish a substantial likelihood of success.

2.      **Breach of Contract Claim.**[2]

As discussed above, Plaintiffs' breach of contract claim will fail because it is based on a misinterpretation of the Consent Agreement.  The Rumfish Variation Clause does not prohibit TradeWinds from using the RUMFISH BEACH AND FISHING Marks.  Plaintiffs' attempt to include in that clause "any and all goods and services" attempts to add significant language that is noticeably absent from that provision.  Rather, as discussed, the phrase "any and all uses" is a modifier phrase for Rumfish terms and means variations of "Rumfish" marks plus another term for restaurant and bar services (i.e., such use variations of Rumfish plus another term must also include the term Grill).  The various drafts of the Consent Agreement, along with RYV's counsel's communications after adding the Rumfish Variation Clause, confirm that the clause was not intended to apply to all goods and services.[3]

Plaintiffs are asking this Court to read-in language to the Consent Agreement that would substantially broaden the scope of the Consent Agreement and be directly inconsistent with and contrary to every other provision in the entire agreement.  In fact, Plaintiffs are asking the Court to grant the extraordinary and drastic remedy of a preliminary injunction, before any discovery in this case, based on language not present in the agreement.  If the parties had wanted to expand the scope of the Consent Agreement and provide for "any and all goods and services" they could have done so.  However, they did not because that would have been contrary to the primary intent and premise of the entire Consent Agreement – i.e., a <u>consent</u> agreement to allow use of certain marks, not restrict them.  Thus, a preliminary injunction should not be issued based on Plaintiffs' breach of contract claim.

---

[2] TradeWinds intends to assert its own breach of contract claim against RYV when it files its Counterclaims.

[3] Under Florida law, a contract should ordinarily be interpreted pursuant to the natural and plain meaning of the contract's language. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996).  However, when a court determines that the terms of a contract are ambiguous, the court "may look beyond the contractual language to discern the intent of the parties in making the agreement." *Id.*

**C.      Plaintiffs' Will Not Be Irreparably Harmed.**

A showing of irreparable injury is "'the sine qua non of injunctive relief.'" *Siegel v. LePore*, 234

F.3d 1163, 1176 (11th Cir. 2000).  Even if a plaintiff establishes a substantial likelihood of success on the

merits, "the absence of a substantial likelihood of irreparable injury would, standing alone, make

preliminary injunctive relief improper." *Id.* at 1176 (11th Cir. 2000); *see also N. Am. Med. Corp. v. Axiom*

*Worldwide, Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008); *Tech Traders, LLC v. Insuladd Envir., Ltd.*, 6:18-

cv-754; 2008 WL 5830568 (M.D. Fla. 2018).[4] Moreover, "the asserted irreparable injury 'must be neither

remote nor speculative, but actual and imminent.'" *Id.* citing *City of Jacksonville*, 896 F.2342d at 1285

(quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989)).

Here, Plaintiffs cannot demonstrate irreparable harm.  The potential diversion or loss of

customers is clearly non-existent, as customers seeking the Rumfish Y Vino restaurant in California will

not be diverted to a resort on St. Pete Beach thousands of miles away.  Moreover, the parties have already

been coexisting with RUMFISH marks in the same restaurant industry for two and half years without any

known confusion. It is hard to conceive how the addition of the term "GRILL" to the RUMFISH BEACH

AND FISHING Marks, as Plaintiffs contend, will alter the circumstances such as to alleviate irreparable

harm and remove the need for the "drastic" and "immediate" relief they are seeking.

**D.      The Balance of Harms Strongly Favors TradeWinds.**

Plaintiffs must demonstrate that the balance of the harms strongly favors Plaintiffs.  *Wreal*, 850

F.3d at 1247.  However, the balance strongly favors TradeWinds.  As discussed above, the potential loss

of customers by Rumfish Y Vino in California due to the use of the RUMFISH BEACH AND FISHING

---

[4] A plaintiff can no longer rely solely on a likelihood of success on a trademark infringement claim to establish irreparable harm, but "must actually show based on the facts of th[e] case that irreparable harm was 'likely,' not merely possible, in the absence of an injunction." *Hoop Culture, Inc. v. GAP Inc.*, 648 Fed.Appx. 981, 985 (11th Cir. 2016).

Marks at a beach resort in St. Pete Beach is non-existent. Any claimed damage to goodwill is remote and speculative at best and is highly unlikely. Plaintiffs will simply not be damaged such to necessitate the drastic and extraordinary relief of preventing TradeWinds the opportunity to a full adjudication on the merits.

On the other hand, being required to rebrand during the pendency of this lawsuit would cause substantial damage to TradeWinds. *Overton Dec.*, ¶ 26. The Guy Harvey Outpost license has expired, and TradeWinds would be forced to create and select an entire new brand for its resort. *Id.* Such re-branding typically takes months of planning before a new brand is implemented and released. *Id.* Selecting any new mark is not as simple as Plaintiffs suggest, as significant marketing, advertising and market testing is critical to selection and successful implementation. *Id.* Being required to choose a new mark would completely shut down the resort for a period of time while the rebranding was implemented and would cause TradeWinds to lose significant income. *Id.* Additionally, TradeWinds' goodwill and reputation would be severely damaged. *Id.* Thus, the balance of the harms favors TradeWinds.

**E.    A Preliminary Injunction Would Disserve the Public Interest.**

The public interest favors TradeWinds. In a trademark action, "the value placed on free competition must be weighed against any individual's property interest in that trademark." *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 505 (8th Cir.1987). The court should take into account "the interest in avoiding monopolies and in encouraging, not stifling, competition." *Id.*; *accord Uber Promotions*, 162 F.Supp.3d at 1280 citing *Calvin Klein Cosmetics*, 815 F.2d at 505.

It would be adverse to the public interest to enjoin TradeWinds from using the RUMFISH BEACH AND FISHING Marks in connection with its beach resort, fishing charters and clothing when Plaintiffs are not using their RUMFISH Y VINO mark with any of those goods and services, especially

considering Plaintiffs' trademark registration is unenforceable and TradeWinds used its RUMFISH mark in the U.S. years prior to Plaintiffs' use. Moreover, Plaintiffs only operate a small restaurant in California thousands of miles from TradeWinds' resort, and the chances of consumer confusion is very unlikely.

## F.    Bond

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *See* Rule 65(c), F.R.C.P. The amount of an injunction bond is a matter within the discretion of the district court. *See Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd.*, 112 F.3d 1125, 1127 (11th Cir.1997). Courts have required a bond of at least $100,000 when a defendant established a rational basis that it was likely to incur severe costs and damages due to a preliminary injunction. *See Osborne Assocs., Inc. v. Cangemi*, 3:17-CV-1135-J-34MCR, 2017 WL 5443146, at *17 (M.D. Fla. Nov. 14, 2017); *Advice Interactive Group, LLC v. Web.com Group, Inc.*, 3:17-CV-801-J-39MCR, 2017 WL 6554409, at *16 (M.D. Fla. Oct. 20, 2017), aff'd, 734 Fed. Appx. 712 (11th Cir. 2018).

Here, Plaintiffs contend that, if the Court grants a preliminary injunction, the security should be $0 or nominal because "Defendants will suffer no harm if it is later determined they were wrongfully enjoined." To the contrary, TradeWinds will be substantially harmed if prohibited from using the RUMFISH BEACH AND FISHING Marks and forced to rebrand after spending months and substantial costs working on launching those marks. Specifically, the estimated costs to rebrand would amount to $116,396.67, which includes the costs associated with various signage, various décor, third party design fees, website design, welcome maps, uniforms, telephone cards, TripAdvisor cards, 4x4 truck wrap, bar crawl passports, retail counter wrap, artwork, murals, viewing area wrap, television channel cards, and wall hooky. Additionally, the estimated damages in loss of revenue and goodwill would be at least in the

amount of $250,000.00.  Thus, the total damages that TradeWinds would suffer from being required to

rebrand is at least $366,396.67.  Thus, if an injunction is issued, TradeWinds respectfully requests that

Plaintiffs be required to post a bond of no less than $366,396.97.

## IV.    CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion.

Dated: April 4, 2019                          Respectfully submitted,

                                              By:   /s/Joshua D. Martin
                                              Joshua D. Martin
                                              Florida Bar No. 028100
                                              JOHNSON & MARTIN, P.A.
                                              500 W. Cypress Creek Rd., Suite 430
                                              Fort Lauderdale, Florida 33309| (954) 790-6699
                                              Email: josh.martin@johnsonmartinlaw.com
                                              *Attorney for Defendants, Fortune Hotels, Inc.,*
                                              *Ria-Sandpiper, Inc., and Resort Inns of America, Inc.*
                                              *d/b/a TradeWinds Island Resort*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 4th day of April 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically serve all attorneys of record with a true copy thereof.

                          By:    /s/ Joshua D. Martin
                                 Joshua D. Martin

## SERVICE LIST

Murray Silverstein, Jacob L. Boehner, Esq., Greenspoon Marder LLP, murray.silverstein@gmlaw.com, jacob.boehner@gmlaw.com, 401 E. Jackson St., Ste. 1825, Tampa, FL 33602
Michael A. DiNardo, Esq., Kelly & Kelly, LLP, mike@kelly-kellylaw.com, 6320 Canoga Ave., Ste. 1650, Woodland Hills, CA 93167