# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUMFISH Y VINO CORPORATION,
a Belize corporation, and JPL PARTNERS
#1 LP, a California Limited Partnership,

     Plaintiffs,

v.            CASE NO. 8:19-cv-00595-T-36AEP

FORTUNE HOTELS, INC., a Florida corporation,
RIA-SANDPIPER, INC., a Florida corporation,
RESORT INNS OF AMERICA, INC.
D/B/A TRADEWINDS ISLAND RESORT,
a Florida corporation, and DOES 1-10,

     Defendants.
_____/

**DECLARATION OF KEITH OVERTON**

  I, Keith Overton, hereby declare and state:

  1. I am over the age of 21 and am otherwise sui juris.

  2. I have personal knowledge of the matters set forth herein and am competent to testify regarding the matters stated in this Declaration.

  3. I am the President of Resort Inns of America, Inc. d/b/a TradeWinds Island Resort ("Resort Inns") and provide this Declaration in support of Defendants, Resort Inns, Fortune Hotels, Inc., and RIA-Sandpiper, Inc.'s (collectively "TradeWinds"), Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction.

1

4. TradeWinds, who operates TradeWinds Island Resorts on St. Pete Beach ("TradeWinds Resort"), which opened in 1986, originally coined the term "RumFish" in early 2013 when brainstorming regarding possible names for its new restaurant at the TradeWinds Resort.

5. Specifically, TradeWinds entered into a licensing agreement with Guy Harvey Outpost in May 2012 and rebranded one of its former hotels, Sandpiper Beach Resort, as the Guy Harvey Outpost. Shortly after rebranding, TradeWinds decided to open a new restaurant at the Guy Harvey Outpost and spent significant time planning the concept for that restaurant.

6. In February 2013, TradeWinds collaborated with Mark Ellert of Guy Harvey Outpost to determine a name for TradeWinds' newly planned restaurant concept. While numerous potential names were considered and floated, the name "RumFish" was coined and considered as a potential name during a meeting due to everyone's love for rum, seafood and fishing. Other names that were strongly considered included "Longboards" and "Boathouse." In total, over 70 different names were considered. Specifically, Mr. Ellert and TradeWinds representatives, including myself, were looking for names with two syllables that were suggestive of casual, lively, active and fun, without any ethnic reference, and worked well without a tag line. Attached hereto as **Exhibit A** is a true and correct copy of an email chain between Mark Ellert, myself and other TradeWinds representatives dated February 26, 2013, discussing potential names for the newly planned restaurant, including "RumFish." Additionally, a list of the potential names that were considered is attached to the email.

7. TradeWinds ultimately decided to use "RumFish Grill" for its new restaurant concept. The RumFish Grill restaurant was set to open at TradeWinds resort in May 2014.

8. TradeWinds purchased the domain name, www.rumfishgrill.com, on March 14, 2013. Attached hereto as **Exhibit B** is a true and correct copy of the ICANN WHOIS page for rumfishgrill.com.

9. In Plaintiffs' Amended Motion for a Preliminary Injunction [Doc 17] ("Plaintiffs' Motion"), Plaintiffs contend that the Solomons met a man named Hugh Darley in the fall of 2013, that he had a partnership with Norwegian Cruise Lines (NCL) and that Mr. Darley and the president of NCL dined at Rumfish Y Vino in Belize. Plaintiffs also contend that Mr. Darley suggested the RUMFISH mark to TradeWinds and/or that TradeWinds learned of "Rumfish Y Vino" or the RUMFISH mark through a connection to NCL. However, TradeWinds had no knowledge of Hugh Darley and first heard of him in this lawsuit. Additionally, TradeWinds does not have a connection to NCL and NCL did not suggest or otherwise mention the RUMFISH mark to TradeWinds. In fact, TradeWinds had already coined the term RUMFISH and decided to name its new restaurant "RumFish Grill" in early 2013 months before the Solomons met Mr. Darley. Thus, TradeWinds could not have learned of the term "RUMFISH" from Mr. Darley.

10. Additionally, TradeWinds was not aware of any restaurants or any businesses named RUMFISH and was not aware of Rumfish Y Vino in Belize when it selected the RUMFISH mark and the name of RumFish Grill for its new restaurant.

11. To the best of TradeWinds' knowledge, no third parties were using any RUMFISH marks in the U.S. when they selected the mark in early 2013, and there were no U.S. trademark filings for any RUMFISH marks at that time.

12. TradeWinds spent months preparing to open the restaurant and launching the new "RumFish" brand and began marketing and advertising "RumFish Grill" in early 2014. Attached hereto as **Exhibit C** are samples of marketing and advertising, as well as news articles, of "RumFish Grill" from early 2014. Attached hereto as **Exhibit D** is the RumFish Grill Facebook page reflecting that the Facebook page was created on February 18, 2014.

13. Additionally, TradeWinds issued a press release on April 2, 2014 regarding the planned opening of "RumFish Grill" in May 2014. TradeWinds believes that the press release was issued and released nationwide. Attached hereto as **Exhibit E** is a true and correct copy of an issued press release from April 3, 2014 in Tampa Bay Newswire.

14. The restaurant's main attraction was a 33,500-gallon aquarium built by Wayde King and Brett Raymer of Animal Planet's hit series, "Tanked." The tank cost approximately $1 million to build and the restaurant cost approximately $5 million to build. The restaurant's aquarium was featured on an episode of "Tanked" on Animal Planet that aired nationally on May 16, 2014. Attached hereto as **Exhibit F** is true and correct copy of a news article from Tampa Bay Business Journal announcing the show prior to it being aired.

15. In April 2014, after planning to open RumFish Grill for several months and issuing a press release, and within a month of the planned opening, TradeWinds received communications from RYV's counsel informing TradeWinds of the Rumfish Y Vino restaurant in Belize, U.S. trademark applications it had filed for RUMFISH and RUMFISH Y VINO, and demanding $500,000 for rights to use the RUMFISH GRILL mark in the U.S.

16. Despite the fact that RYV had no rights to any RUMFISH marks in the U.S., TradeWinds desired to avoid costly litigation and USPTO proceedings that would be necessary

4

to establish its rights in the RUMFISH mark and defeat RYV's fraudulent filings. Thus, TradeWinds ultimately agreed to pay RYV $30,000 as a "nuisance payment" to essentially go away and memorialized it in the form of the subject Consent Agreement.

17. TradeWinds opened RumFish Grill in May 2014 as planned.

18. During the spring and summer of 2018, TradeWinds knew that its license with Guy Harvey Outpost was set to expire in March 2019 and considered a number of rebranding options. Due to the success of RumFish Grill and well-known reputation throughout the country, TradeWinds ultimately decided to rebrand the resort as RumFish Beach Resort and also decided to expand use of "RumFish" variations such as RumFish Charters for its fishing charter services ("RUMFISH BEACH AND FISHING Marks"). TradeWinds' decision to use those marks was completely unrelated to Rumfish Y Vino, and TradeWinds had no intention of misappropriating the goodwill of Plaintiffs or the RUMFISH Y VINO mark. TradeWinds' desire to use the RUMFISH BEACH AND FISHING Marks was based solely on the success of RUMFISH GRILL and TradeWinds' desire to expand its own brand. TradeWinds is a well-known resort, the largest on the west coast of Florida with over 1100 employees, operating since 1986 and had no motivation to trade off the goodwill of a single restaurant in California that opened in 2016.

19. Throughout its contemplation of various potential rebrands, TradeWinds was cognizant of the Consent Agreement but knew that it only pertained to restaurant and bar services. TradeWinds did not want to take any actions that would be contrary to the terms of the Consent Agreement. Significantly, the parties have operated their respective RumFish restaurants for several years without any known actual confusion.

20. While the Consent Agreement did not prohibit TradeWinds' use of the RUMFISH BEACH AND FISHING Marks, TradeWinds decided to seek express consent from RYV to use them out of an abundance of caution due to the massive efforts and costs that would go into the rebrand.

21. TradeWinds expected little resistance because the goods and services were very different from the restaurant owned by JPL in California and the chances of consumer confusion were very low. Additionally, TradeWinds resort, where the RUMFISH BEACH AND FISHING Marks would be used, is located on St. Pete Beach in Florida, thousands of miles across the country from the Rumfish Y Vino restaurant.

22. However, RYV objected to TradeWinds' use of the RUMFISH BEACH AND FISHING Marks.

23. After deciding that RYV's objection was baseless, TradeWinds' ultimately decided to proceed with use of the RUMFISH BEACH AND FISHING Marks. TradeWinds invested substantial funds in the rebranding. The rebrand was officially launched on March 13, 2019, after the license with Guy Harvey Outpost expired.

24. Plaintiffs claim in their Motion that they previously put TradeWinds on notice of the "Grill" requirement in the subject Consent Agreement in March 2016 with respect to a RumFish Grill restaurant that was set to open at the Tampa airport. Plaintiffs contend that TradeWinds acknowledged such requirement in a response letter. However, that RumFish Grill was for a <u>restaurant</u>, not goods and services outside of restaurants and bars in which the RUMFISH BEACH AND FISHING Marks are being used.

25. TradeWinds markets and advertises on its website and social media. While TradeWinds attracts customers from around the country, TradeWinds directs the majority of its marketing and advertising at consumers in Florida. As a result, the majority of customers that stay at the resort are from Florida.

26. Being required to rebrand during the pendency of this lawsuit would cause substantial damage to TradeWinds. The Guy Harvey Outpost license has expired, and TradeWinds would be forced to create and select an entire new brand for its resort. Such re-branding typically takes months of planning before a new brand is implemented and released. Selecting any new mark is not as simple as Plaintiffs suggest, as significant marketing, advertising and market testing is critical to selection and successful implementation. Being required to choose a new mark would completely shut down the resort for a period of time while the rebranding was implemented and would cause TradeWinds to lose significant income. Additionally, TradeWinds' goodwill and reputation would be severely damaged.

27. In the event that a preliminary injunction is entered and TradeWinds is required to rebrand its various RUMFISH BEACH AND FISHING Marks at TradeWinds resort, the estimated total costs to rebrand would amount to $116,396.67, which includes the costs associated with various signage, various décor, third party design fees, website design, welcome maps, uniforms, telephone cards, TripAdvisor cards, 4x4 truck wrap, bar crawl passports, retail counter wrap, artwork, murals, viewing area wrap, television channel cards, and wall hooky. Additionally, the estimated damages in loss of revenue and goodwill is at least in the amount of $250,000.00. Thus, the total damages that TradeWinds would suffer from being required to rebrand is at least $366,396.67.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: April 4, 2019.

By: _____
Keith Overton