# EXHIBIT 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUMFISH Y VINO CORPORATION,
a Belize corporation, and JPL PARTNERS
#1 LP, a California Limited Partnership,

        Plaintiffs,

v.                            **CASE NO. 8:19-cv-00595-T-36AEP**

FORTUNE HOTELS, INC., a Florida corporation,
RIA-SANDPIPER, INC., a Florida corporation,
RESORT INNS OF AMERICA, INC.
D/B/A TRADEWINDS ISLAND RESORT,
a Florida corporation, and DOES 1-10,

        Defendants.
_____/

## DECLARATION OF JAMES DAVID JOHNSON

I, James David Johnson, hereby declare and state:

1. I am over the age of 21 and am otherwise sui juris.

2. I am an attorney duly licensed to practice law in the State of Florida and a shareholder at Johnson & Martin, P.A. I am counsel for Defendants, Fortune Hotels, Inc. ("Fortune Hotels"), RIA-Sandpiper, Inc. ("RIA"), and Resort Inns of America, Inc. d/b/a TradeWinds Island Resort ("Resort Inns") (collectively "TradeWinds"), in trademark matters and other various legal matters. I, along with other attorneys at my firm, have represented TradeWinds with respect to disputes and negotiations between TradeWinds and Plaintiffs prior to the filing of this lawsuit.

1

3. The statements in this Declaration are based on my personal knowledge, the review of various USPTO records, the review of materials submitted by Plaintiffs in this lawsuit, and prior communications with counsel for Plaintiffs. I am competent to testify to the matters set forth herein.

4. Based on USPTO records and Plaintiffs' Amended Motion for a Preliminary Injunction ("Plaintiffs' Motion"), Rumfish Y Vino Corporation ("RYV") filed a U.S. trademark application for RUMFISH Y VINO on October 7, 2013 based on alleged use in commerce. Attached hereto as **Exhibit G** is a specimen of use that RYV submitted to the USPTO with its application on October 7, 2013. The specimen appears to show use of the RUMFISH Y VINO mark in Belize and not the United States. The application for RUMFISH Y VINO was amended with the USPTO to an intent to use application on or about May 8, 2014.

5. Based on USPTO records and Plaintiffs' Motion, RYV filed a U.S. trademark application for RUMFISH on April 11, 2014 based on intent to use.

6. On or about April 24, 2014, TradeWinds received a letter from RYV's counsel regarding TradeWinds' planned opening of its RumFish Grill restaurant at the TradeWinds resort, which letter was forwarded to me. RYV's counsel referenced RYV's two pending trademark applications.

7. As an initial response to that letter, I spoke with RYV's counsel on the phone on April 30, 2014 on behalf of TradeWinds. RYV's counsel indicated that RYV had not opened a restaurant in the United States at that time. RYV's counsel also indicated that RYV

demanded payment of $500,000 from TradeWinds in exchange for a right to use "RumFish" in the U.S.

8. The following day on May 1, 2014, I, on behalf of TradeWinds, sent a letter to RYV's counsel rejecting the $500,000 demand and setting forth TradeWinds' position that RYV's monetary demand was nothing more than attempted extortion. I also explained TradeWinds' legal positions, including the fact that RYV's U.S. trademark applications were made in bad faith and that RYV had no rights to any RUMFISH marks in the U.S. A copy of the May 1, 2014 letter is attached hereto as **Exhibit H**.

9. TradeWinds and RYV eventually reached a settlement in principle as to use of the RUMFISH Y VINO mark in the U.S. by RYV and use of the RUMFISH GRILL mark in the U.S. by TradeWinds. The main non-monetary terms were fairly straightforward: RYV would consent to TradeWinds' use of RUMFISH GRILL in the U.S. for restaurants and bars and TradeWinds would consent to RYV's use of RUMFISH Y VINO in the US and a defined "Caribbean Territory" for restaurants and bars. The parties did not place or intend to place any restrictions on use of any goods and services outside of restaurant and bars. In fact, restrictions on use of marks outside of restaurants, bars and clothing were never discussed between the parties or counsel.

10. At the beginning of May 2014, counsel for the parties prepared and exchanged various drafts of the subject Consent and Settlement Agreement ("Consent Agreement").

11. Section 3 of the fully executed Consent Agreement contains a sentence that states: "Fortune also agrees any and all uses of the term "Rumfish" must be used in connection with and immediately followed by the term 'Grill'" ("Rumfish Variation Clause"). The

3

Rumfish Variation Clause was not included in original drafts of the Consent Agreement. A redline comparison of draft versions 2 and 3 of the Consent Agreement from May 12, 2014, attached hereto as **Exhibit I**, shows that the Rumfish Variation Clause was not present at that stage.

12. The Rumfish Variation Clause was subsequently added by RYV's counsel in draft version 4. Attached hereto as **Exhibit J** is a true and correct copy of the redline comparison of draft versions 3 and 4 of the Consent Agreement, which was sent by RYV's counsel to me on May 13, 2014.

13. I never had any communications with RYV's counsel concerning that Rumfish Variation Clause potentially applying to all goods and services in any industry. In fact, I never had any communications with RYV's counsel regarding any restrictions in the Consent Agreement applying to all goods and services except restaurant and bar services. Rather, I understood the intent of the addition of the Rumfish Variation Clause was to expand upon the first sentence in that Section insofar as that, although TradeWinds agreed not to use any of the specific marks listed in the first sentence of Section 3 for restaurant and bar services, TradeWinds would also agree to use the term "Grill" with any other marks containing the term RUMFISH that it used with restaurant and bar services.

14. I understood that the intent of the parties was for the Consent Agreement to only pertain to restaurant and bar services (and clothing in Section 1).

15. On May 21, 2014, eight days after the Rumfish Variation Clause was added by RYV's counsel, RYV's counsel sent an email to me and stated: "When we say your client cannot use RUMFISH standing alone, we want to clarify that it would include 1-844-

4

RUMFISH." A true and correct copy of that email from RYV's counsel to me, dated May 21, 2014, is attached hereto as **Exhibit K**.

16. In or about August 2018, I, on behalf of TradeWinds, contacted RYV regarding a proposed rebranding by TradeWinds and use of new RUMFISH marks in connection with goods and services outside of the restaurant and bar industry, namely beach resorts, fishing charters and clothing ("RUMFISH BEACH AND FISHING Marks"). TradeWinds sought express consent from RYV to use its RUMFISH BEACH AND FISHING Marks. The purpose behind seeking RYV's consent was not because the Consent Agreement prohibited such usage by TradeWinds. Rather, the Consent Agreement is silent concerning the use of marks containing the term RUMFISH with goods and services other than restaurant and bar services (and clothing). Thus, we decided to seek express consent from RYV to use the marks out of an abundance of caution due to the massive efforts and costs that would go into the rebrand. I expected little resistance because the goods and services were very different from the restaurant owned by JPL in California and the chances of consumer confusion were very low.

17. RYV not only refused to provide express consent with respect to TradeWinds' use of the RUMFISH BEACH AND FISHING Marks, but also explained that it contended that the Consent Agreement prohibited TradeWinds from using any RUMFISH mark in connection with any goods and services, even outside of restaurant and bar services, unless RUMFISH was immediately followed by the term "GRILL."

18. After learning of RYV's position, even though TradeWinds did not agree with such position, TradeWinds attempted in good faith to negotiate a potential resolution to avoid costly litigation.

5

19. At all times, either myself or other attorneys at my firm who communicated with RYV's counsel expressly maintained that the Consent Agreement did not restrict use of RUMFISH variations by TradeWinds with respect to goods and services outside of bars and restaurants, that TradeWinds did not actually need Plaintiffs' consent to use the RUMFISH BEACH AND FISHING Marks, and that TradeWinds was only negotiating with Plaintiffs to avoid costly litigation. Also, we were clear in multiple correspondence that the RUMFISH BEACH AND FISHING Marks were very important to TradeWinds and that litigation would likely result if a resolution could not be met based on, among other things, breaches of the Consent Agreement by RYV.

20. At one point in the negotiations, Plaintiffs demanded that they be entitled to use the RUMFISH mark alone, even in connection with restaurant and bar services.

21. According to the California Secretary of State, Plaintiff, JPL Partners #1 LP, did not register to conduct business in the U.S. until February 19, 2016. *See* printout from California Secretary of State attached hereto as **Exhibit L**. Additionally, according to ICANN, the domain name for Rumfish Y Vino in Ventura, www.rumfishyvinoventura.com, was not created until October 7, 2016. *See* ICANN WHOIS page for rumfishyvinoventura.com attached hereto as **Exhibit M**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: April 4, 2019.　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　　James David Johnson