# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RUMFISH Y VINO CORPORATION and
JPL PARTNERS #1 LP,

    Plaintiffs,

v.                                                         Case No: 8:19-cv-595-T-36AEP

FORTUNE HOTELS, INC., RIA-
SANDPIPER, INC., RESORT INNS OF
AMERICA, INC., TRADEWINDS
ISLAND RESORT and DOES 1-10,

    Defendants.

## ORDER

This matter comes before the Court upon the Report and Recommendation ("R&R") filed by Magistrate Judge Anthony Porcelli on April 24, 2019 (Doc. 51). In the R&R, the Magistrate Judge recommends that the Court deny Plaintiffs' Motion for Preliminary Injunction (Doc. 17). Plaintiffs filed two objections (the "Objections") (Doc. 55) to the R&R on May 8, 2019. Defendants filed a response in opposition (Doc. 61) to Plaintiffs' Objections. Upon consideration of the R&R and the parties' submissions, the Court will overrule Plaintiffs' Objections and adopt, confirm, and approve the R&R in all respects.

## I. RELEVANT BACKGROUND

This litigation stems from Plaintiffs' and Defendants' disagreement over the right to use the name "Rumfish" in United States commerce.

Plaintiff Rumfish Y Vino Corporation ("RYV") owns and operates the "RUMFISH y vino" restaurant in Palencia, Belize, which has been in operation since November 2008. Doc. 17 at p. 3. Plaintiffs created domain names and trademark registration in connection with the Belize

restaurant. Doc. 17 at pp. 3-4; Doc. 2 at Exh. 2, Declaration of Pamela Solomon ("Solomon Decl.") at ¶¶ 5, 9.

Plaintiff JPL Partners #1 LP ("JPL1") owns and operates the "RUMFISH y vino" restaurant in Ventura, California, which has been in operation since November 2016. Doc. 17 at p. 3. RYV and JPL1 (collectively, "Plaintiffs") are both owned by John Solomon and Pamela Solomon (the "Solomons"). Solomon Decl. at ¶ 3. The Ventura, California restaurant came about after the Solomons began to consider expanding their business into the United States in early 2013. Doc. 17 at p. 4; Solomon Decl. at ¶ 10. On October 7, 2013, Plaintiffs filed U.S. Trademark Application Serial No. 86/084,571 for "RUMFISH y vino" for use with bar and restaurant services. Doc. 17 at p. 4; Solomon Decl. at ¶ 11. Plaintiffs later filed a petition to amend to bona fide intention to use, which petition was granted. Solomon Decl. ¶ 12. The "RUMFISH y vino" mark was registered on January 17, 2017 as U.S. Trademark Registration No. 5,124,613. Doc. 17 at p. 4; Solomon Decl. at ¶ 28.

In May 2012, Defendants Fortune Hotels, Inc. ("Fortune"), Ria-Sandpiper, Inc. ("Sandpiper"), Resort Inns of America, Inc. ("Tradewinds")[1] (collectively, "Defendants") entered into a licensing agreement with Guy Harvey Outpost to rebrand a former hotel, then called the Sandpiper Beach Resort, as the "Guy Harvey Outpost." Doc. 39, Exh. 1, Declaration of Keith Overton ("Overton Decl.") at ¶ 5. In February 2013, Defendants collaborated with Guy Harvey Outpost to open a new restaurant at the Guy Harvey Outpost. Overton Decl. at ¶¶ 5-6. While more than 70 names were considered, the name "RumFish" was coined and chosen for the restaurant concept. Overton Decl. at ¶¶ 6-7.

---

[1] Plaintiffs also name "Does 1-10" in their Complaint, which have not been identified.

Defendants purchased the domain name www.rumfishgrill.com on March 14, 2013. Overton Decl. at ¶ 8. Defendants began marketing and advertising the "RumFish Grill" in early 2014. Overton Decl. at ¶ 12. Defendants created a Facebook page for the RumFish Grill on February 18, 2014 and issued a press release on April 2, 2014 regarding the planned opening of the RumFish Grill in May 2014. Overton Decl. at ¶¶ 12-13.

On or about May 1, 2014, Defendants filed U.S. Trademark Application Serial No. 86/269,370 for "RUMFISH GRILL" for use with clothing and restaurant and bar services upon an intent to use. Solomon Decl. at ¶ 17; Solomon Decl. at Exh. P. That application was registered on October 13, 2015 as U.S. Trademark Registration No. 4,832,829. Solomon Decl. at ¶ 18; Solomon Decl. at Exhs. B, P. On or about January 16, 2015, Defendants filed U.S. Trademark Application Serial No. 86/505,726 for a "RUMFISH GRILL" logo for use with clothing and restaurant and bar services. Solomon Decl. at ¶ 25; Solomon Decl. at Exh. R.

In the spring of 2014, Plaintiffs learned[2] of Defendants' plan to open a restaurant called "Guy Harvey's Rumfish" in May 2014. Solomon Decl. at ¶ 14. In May 2014, Plaintiffs and Defendants entered into negotiations concerning their respective rights to use and register their respective marks incorporating the term "RUMFISH." Solomon Decl. at ¶ 20. Ultimately, the parties reached an agreement and executed a binding consent and settlement agreement with an effective date of May 23, 2014. Solomon Decl. at ¶ 20; Solomon Decl. at Exh. C.

---

[2] Plaintiffs suspect that Defendants obtained the "RUMFISH" name from Hugh Darley ("Darley"), someone who had expressed interest in RYV in the fall of 2013. Plaintiffs later "learned of Mr. Darley's partnership with [Norwegian Cruise Lines ("NCL")], from which [Plaintiffs] presumed a connection to NCL's partnership with Guy Harvey and the Defendants." Solomon Decl. at ¶¶ 13-14. Defendants dispute this assertion, contending that they had no knowledge of Darley until this lawsuit, that Defendants do not have a connection to NCL, that NCL did not suggest or otherwise mention the RUMFISH name to them, that they were not aware of any restaurants or business named "RUMFISH" or "RUMFISH Y VINO" when they decided on the name, that, to the best of their knowledge, no third parties were using any "RUMFISH" marks in the United States when they selected the name in 2013, and that they had already decided on the "RUMFISH" name months before Plaintiffs met Darley. Overton Decl. at ¶¶ 9-11.

Defendants opened the RumFish Grill in May 2014 as planned. Overton Decl. at ¶ 17. Defendants knew that its license with Guy Harvey Outpost was set to expire in March 2019 and began to consider a number of rebranding options in the spring and summer of 2018. Overton Decl. at ¶ 18. Defendants decided to rebrand the resort as the RumFish Beach Resort and further decided to expand the use of "RumFish" to variations such as "RumFish Charters." Overton Decl. at ¶ 18.

Defendants contacted Plaintiffs on or about September 2018 to discuss a proposed addendum to the settlement agreement. Solomon Decl. at ¶ 29; Overton Decl. at ¶ 20. The parties were unable to reach an agreement on the addendum. Solomon Decl. at ¶ 30; Overton Decl. at ¶ 22.

Plaintiffs understood that Defendants would go in a different direction for their branding because the parties were unable to come to an agreement. Solomon Decl. at ¶¶ 29-30. Defendants, however, determined that Plaintiffs' objections to Defendants' rebranding were baseless and decided to proceed with their plan. Overton Decl. at ¶ 23.

Plaintiffs became aware of additional trademark applications filed by Defendants. Solomon Decl. at ¶ 31. On or about August 6, 2018, Defendants filed: (1) U.S. Trademark Application Serial No. 88/066,454 for "RUMFISH" for use with clothing, towels, hotel and resort services, online reservations and bookings, and fishing services; (2) U.S. Trademark Application Serial No. 88/066,480 for "RUMFISH BEACH RESORT" for use with clothing, towels, hotel and resort services, and online reservations and bookings; and (3) U.S. Trademark Application Serial No. 88/066,500 for "RUMFISH CHARTERS" for use with clothing, towels, and fishing services. Solomon Decl. at ¶ 31; Solomon Decl. at Exhs. T-V.

On or about February 14, 2019, Plaintiffs became aware of news articles and press releases regarding Defendants' intention to rebrand its resort property. Solomon Decl. at ¶ 32. The articles

and press releases announced that Defendants' licensing agreement with Guy Harvey was ending, and that Defendants intended to rebrand as "RUMFISH BEACH RESORT." Solomon Decl. at ¶ 32. In addition, Defendants intended to use the terms "RUMFISH BEACH LIFE" and the "RUMFISH BRAND." Solomon Decl. at ¶ 32.

Plaintiffs allege that Defendants' actions violate the settlement agreement. Solomon Decl. at ¶ 33. Plaintiffs filed their complaint (Doc. 1) on March 8, 2019 setting forth claims against Defendants for actual and anticipatory breach of contract, trademark infringement, false designation of origin and false representation of trademarks under the Lanham Act, declaratory judgment, and cancellation of trademarks under the Lanham Act. The same day, Plaintiffs filed a Motion for Temporary Restraining Order and Motion for Preliminary Injunction. The Motion for Temporary Restraining Order was denied on March 13, 2019. Doc. 12. Plaintiffs' Motion for Preliminary Injunction was referred to the Magistrate Judge for report and recommendation. Doc. 14.

## II.   LEGAL STANDARD

"The issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Samson v. Murray*, 415 U.S. 61 (1974)). Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. "The purpose of a preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). "The grant or denial of a preliminary injunction is a decision within the discretion of the district court." *Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.,* 112 F.3d 1125,

1126 (11th Cir. 1997). Moreover, the entry of a preliminary injunction is "the exception rather than the rule." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (citation omitted).

A party seeking entry of a preliminary injunction must establish that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Forsyth Cty. v. U.S. Army Corps of Eng'r*, 633 F.3d 1032, 1039 (11th Cir. 2011) (citation omitted); M.D. Fla. L. R. 4.05(b)(4); 4.06(a)(1).

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). With regard to those portions of the Report and Recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72. The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

## III.   DISCUSSION

The Magistrate Judge recommends denying Plaintiffs' Motion for Preliminary Injunction on the basis that Plaintiffs failed to show (1) a substantial likelihood of success on the merits of their breach of contract, trademark infringement, and false designation of origin claims; (2) that they will suffer irreparable harm; (3) that the harm to them outweighs the harm a preliminary

injunction would cause to Defendants; and (4) that the public interest would not be disserved by enjoining Defendants. Before so concluding, the Magistrate Judge held a hearing on the Motion and considered Plaintiffs' and Defendants' positions in light of the applicable law.

Plaintiffs' Objections to the R&R are two-fold. First, Plaintiffs object to the Magistrate Judge's analysis of the parties' settlement agreement. Second, Plaintiffs object to the Magistrate Judge's "apparent conclusion" that Plaintiffs lacked a bona fide intent to use their Rumfish Y Vino mark in United States Commerce as of October 2013. The Court addresses Plaintiffs' Objections in turn, making a *de novo* determination as to each.

### A. Settlement Agreement

The Magistrate Judge's analysis of the settlement agreement bears on the R&R's ultimate conclusion that Plaintiffs failed to demonstrate a substantial likelihood of success on the merits with respect to their breach of contract claim. Plaintiffs and Defendants dispute the meaning of the following two sentences in the settlement agreement:

> Fortune agrees that it will not utilize the words and phrases RUMFISH, RUMFISH BAR, RUMFISH WINE, RUMFISH AND WINE, and/or RUMFISH Y VINO in connection with restaurant and bar services in the United States. Fortune also agrees any and all uses of the term "Rumfish" must be used in connection with and immediately followed by the term "Grill."

In the Motion for Preliminary Injunction, Plaintiffs argue that Defendants' rebranding was in direct violation of the settlement agreement because, according to the above two sentences, anytime Defendants use "RUMFISH," they must also use "GRILL" immediately after. Doc. 17 at p. 12. In support, Plaintiffs point to the words "any and all uses" in the second sentence.

Defendants argue in response that Plaintiffs misinterpret the settlement agreement and ask the Court to read in language that is not there. Defendants contend that the phrase "any and all

uses" in the second sentence is merely a "modifier phrase for Rumfish terms and means variations of 'Rumfish' marks plus another term for restaurant and bar services." Doc. 39 at p. 19.

Upon review, the Magistrate Judge found merit to Defendants' interpretation of the settlement agreement. The Magistrate Judge held that, when read in its entirety, the settlement agreement "appears to pertain to the use of 'RUMFISH' marks solely in relation to restaurant and bars services." Doc. 51 at p. 17. The Magistrate Judge further concluded,

> if the restriction set forth in the second sentence of paragraph 3 applied to every use of the "RUMFISH" mark relating to any good or service offered by TradeWinds, as Plaintiffs suggest, such an interpretation would render the first sentence entirely meaningless. Rather, the most reasonable interpretation of the plain language of the second sentence of paragraph 3 of the Agreement would be that the phrase "any and all uses" pertains to TradeWinds' use of the "RUMFISH" mark in connection with its restaurant and bar services, not every potential good or service TradeWinds might offer. Furthermore, to the extent that any ambiguities exist in the interpretation of the phrase "any and all uses" in paragraph 3, the resolution of such interpretation would be resolved against Plaintiffs as the parties who drafted the language.

Doc. 51 at p. 17.

In their first objection, Plaintiffs argue that the Magistrate Judge's finding that Plaintiffs' interpretation of the second sentence would renter the first sentence meaningless is in error because "the two sentences accomplish different purposes." Doc. 55 at p. 2. Plaintiffs argue that the first sentence, "Fortune agrees that it will not utilize the words and phrases RUMFISH, RUMFISH BAR, RUMFISH WINE, RUMFISH AND WINE, and/or RUMFISH Y VINO in connection with restaurant and bar services in the United States," is a prohibitive sentence, while the second sentence, "Fortune also agrees any and all uses of the term 'Rumfish' must be used in connection with and immediately followed by the term 'Grill,'" is a permissive sentence which describes the specific composites that Defendants can use, namely, "RUMFISH GRILL." Plaintiffs also argue

that there is no ambiguity in the two sentences and that disagreement by the parties cannot create ambiguity.

The Court disagrees with Plaintiffs' reasoning. Rather than support its argument, Plaintiffs' suggestion about the purpose of the two sentences lends credence to the Magistrate Judge's analysis. If the second sentence described the only way in which Defendants could ever use "RUMFISH," as Plaintiffs argue in their Objections, then the first sentence describing what "RUMFISH" terms Plaintiffs could *not* use would be entirely meaningless. Stated differently, if the settlement agreement limited Defendants use of "RUMFISH" solely to "RUMFISH GRILL," the first sentence describing which words Defendants *could not* use— RUMFISH, RUMFISH BAR, RUMFISH WINE, RUMFISH AND WINE, and/or RUMFISH Y VINO—would not be needed because the other sentence already establishes that Defendants cannot use any terms besides "RUMFISH GRILL."

The Court agrees with the Magistrate Judge that Defendants' interpretation of the settlement agreement on the present record has merit. The settlement agreement, read as a whole, appears to relate only to restaurant and bar services. Moreover, reading the second sentence of the clause at issue in the way Plaintiffs urge would appear to render the first sentence meaningless. Thus, the Magistrate Judge did not err in determining that Plaintiffs failed to establish a substantial likelihood of success on the merits of their breach of contract claim. Plaintiffs' first objection will be overruled.

**B. Intent to Use**

Plaintiffs next object to the Magistrate Judge's "apparent conclusion" that Plaintiffs lacked a bona fide intent to use the RUMFISH Y VINO mark in United States Commerce. Plaintiffs argue that the trademark registration for RUMFISH Y VINO is entitled to a presumption of validity

under 15 U.S.C. § 1115 and that the burden first falls on the challenging party to present evidence proving invalidity. Doc. 55 at p. 4. Plaintiffs contend that Defendants failed to present any evidence regarding lack of bona fide intent and attempted to shift the burden by arguing that Plaintiffs failed to come forward with evidence of a bona fide intent.

Plaintiffs' argument is unavailing. The Magistrate Judge made no conclusions about Plaintiffs' bona fide intent to use the RUMFISH Y VINO mark in United State commerce. Rather, the Magistrate Judge merely noted that Defendants argument cast some doubt as to whether Plaintiffs had a bona fide intent to use. Nonetheless, the Magistrate Judge decided not to make any determinations about the issue, finding instead that Plaintiffs were unable to establish a substantial likelihood of success on the merits for their trademark infringement claim because Plaintiffs were not able to establish a likelihood of confusion on the present record. Doc. 51 at p. 22. Plaintiffs' objection is not based on an accurate reading of the R&R. Thus, Plaintiffs' second objection will be overruled.

## IV. CONCLUSION

After careful consideration, including a *de novo* review of the portions of the R&R to which Plaintiffs made Objections, the Court will adopt, confirm, and approve the R&R in all respects. Plaintiffs' Objections will be overruled for the reasons stated above. Moreover, the remainder of the conclusions in the R&R are not clearly erroneous.

Accordingly, it is **ORDERED:**

1. Plaintiffs' Objections (Doc. 55) are **OVERRULED.**
2. The Report and Recommendation of the Magistrate Judge (Doc. 51) is **ADOPTED, CONFIRMED, AND APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. Plaintiffs' Amended Motion for Preliminary Injunction (Doc. 17) is **DENIED.**

**DONE and ORDERED** in Tampa, Florida, this 31st day of July 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: All Counsel of Record
All *Pro Se* Parties